UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER GALLO**<br><br>Plaintiff, v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-01358 |

## MEMORANDUM OPINION

Plaintiff Alexander Gallo beneficially owns a rent-controlled apartment in Washington, D.C. through an eponymous LLC. Purportedly facing negative cashflow on the unit, the LLC petitioned the city's Rent Administrator to allow it to raise the tenant's rent beyond the percentage allowed. The Administrator denied the petition, and the LLC lodged an administrative appeal, which apparently has been pending for over two years.[1] Weary of the wait, Gallo himself filed this *pro se* action against the District of Columbia and the Rent Administrator, alleging that the petition denial violated his rights under the Fifth Amendment's Due Process and Takings Clauses.

The defendants move to dismiss for lack of standing, failure to exhaust administrative remedies, and failure to state a claim. Finding that Gallo lacks prudential (though not constitutional) standing to pursue relief for alleged injuries that are entirely derivative of any suffered by the LLC, the Court will grant the motion on the first ground asserted. The Court will

---

[1] Gallo often refers to himself and the LLC interchangeably in discussing the administrative process. The LLC brought the initial petition, see Compl. ¶ 10, and presumably the appeal from its denial as well.

withhold its order of dismissal for 30 days, however, to allow Gallo an opportunity to substitute the LLC as plaintiff if he so chooses.

I. **Background**

Gallo Holdings LLC holds title to, and Gallo himself beneficially owns and manages, an apartment located in the southeast quadrant of Washington, D.C., where Andrea Grayton resides as a tenant. Compl. ¶¶ 1, 7. The LLC "inherited" Ms. Grayton as a tenant when it purchased the property in 2019. Id. ¶ 6. Over a decade earlier, the prior owner of the property entered a settlement agreement with Grayton that capped annual rent increases at 5%. Attachment 3 ("RAD Denial") at 2.

In February 2023, Gallo Holdings filed a hardship petition with the D.C. Housing Administration's Rental Accommodations Division ("RAD"), requesting a 96.4% rent increase on Grayton's unit. Compl. ¶ 10; RAD Denial at 1. Acting for RAD, the city's Rent Administrator commissioned an audit report, which recommended that the petition be granted. RAD Denial at 2. After reviewing the report, however, the Rent Administrator concluded the proposed rent increase would violate the terms of the 2008 settlement agreement between Grayton and her previous landlord. Id. at 3. Consistent with that determination, Gallo recounts receiving a telephone call in March 2023 from someone at RAD who informed him that the petition had been denied and that he could appeal to the Office of Administrative Hearings ("OAH"). Compl. ¶ 15. Gallo filed an appeal with OAH within thirty days of the phone call. Id. ¶ 19. Gallo reports that, over two years later, OAH has yet to decide the appeal. Pl.'s Opp. at 2; Compl. ¶ 19.

Accordingly, Gallo initiated this suit, alleging various violations of the Fifth Amendment on the part of the District and the Rent Administrator. Compl. at 1. The defendants have moved

to dismiss for lack of standing, failure to exhaust administrative remedies, and failure to state a claim for relief. Gallo opposes.

## II. Analysis

### A. Standing

The defendants first contend that Gallo lacks standing because he does not own the property in question and therefore is not a proper plaintiff in this case. See Defs.' Mot. at 5. The Court agrees, but with a twist.

While the District cites the legal standard for constitutional standing, the issue of whether the "plaintiff [is] [the] proper proponent[] of the particular legal rights on which they base their suit," Singleton v. Wulff, 428 U.S. 106, 112 (1976), is rather an issue of the prudential limitation on third-party standing, see Honig v. Doe, 484 U.S. 305, 318 (1988). "[Constitutional] standing is a threshold jurisdictional question[.]" Holistic Candlers & Consumers Ass'n v. FDA, 664 F.3d 940, 943 (D.C. Cir. 2012) (citation and internal quotation marks omitted). A plaintiff possesses constitutional standing when he suffers an "injury in fact" that is "fairly traceable" to the defendant's conduct and is "likely to be redressed" by a judicial decision in his favor. Attias v. Carefirst, Inc., 865 F.3d 620, 625 (D.C. Cir. 2017) (citation omitted). Prudential standing, on the other hand, is "a more complex, judge-made concept of standing, encompassing a variety of legal doctrines, including the requirement in Federal Rule of Civil Procedure 17 that the plaintiff be the real party in interest." Giron v. Zeytuna, Inc., 597 F. Supp. 3d 29, 42 (D.D.C. 2022) (citations and internal quotation marks omitted).

Gallo has constitutional standing. "A plaintiff need not own the property at issue to suffer a concrete injury in connection with its use or disposition." 333 8th Street, NE, LLC v. Turnkey Title, LLC, No. 23-cv-941 (JEB), 2023 WL 5528028, at *3 (D.D.C. Aug. 28, 2023).

Gallo pleads that he lost income due to the loss of rent to Gallo Holdings caused by the denial of its petition. And the Court could redress that injury by granting the relief Gallo seeks. See Shaw v. Marriott Int'l, Inc., 605 F.3d 1039, 1042 (D.C. Cir. 2010) ("[E]conomic loss clearly constitutes a distinct and palpable injury[.]" (citation omitted) (first alteration in original)).

Gallo lacks prudential standing, however, because the LLC suffered the alleged injury, not Gallo himself. Under D.C. law, the "majority or sole shareholder [of an LLC] is prohibited from suing individually to redress wrongs associated with real property owned by a corporate entity because, under corporate law, 'title to the corporate property is vested in the corporation and not in the owner of its stock.'" Martin v. Santorini Cap., LLC, 236 A.3d 386, 393 (D.C. 2020) (quoting Est. of Raleigh v. Mitchell, 947 A.2d 464, 470–73 (D.C. 2008)); see also 333 8th Street, NE, LLC, 2023 WL 5528028, at *4 ("LLC members may not initiate actions to enforce the rights of the LLC."). There are two exceptions where an individual member of an LLC still has standing despite this general rule: (1) "'where the allegedly wrongful conduct violates a duty to the complaining [LLC member] independent of the fiduciary duties owed that party along with all other [LLC members],' such as a duty that arises out of an employment relationship"; and (2) "'where the conduct causes an injury to the [LLC member] distinct from any injury to the [LLC] itself,' such as losses resulting from a company wrongfully withholding dividends." Labovitz v. Wash. Times Corp., 172 F.3d 897, 901 (D.C. Cir. 1999) (quoting Williams v. Mordkofsky, 901 F.2d 158, 164 (D.C. Cir. 1990)).

Here, Gallo acknowledges that the property is titled to the LLC, whereas he "beneficially owns and manages" it. See, e.g., Compl. ¶ 7. And the Rent Administrator's order denying the hardship petition indicates that it was filed by "Gallo Holdings LLC," not Gallo individually. See RAD Denial at 1. Gallo asserts that the defendants' actions "clearly show[] individual injury

to [him] in some extent [and] the only reason to bring in the title holder would perhaps be to collect a money judgment[,]" but that misunderstands "injury" in the legal sense of the term.  See Pl.'s Opp. at 1.  The fact that "stock ownership is concentrated in the hands of one person . . . does not alter the fact that title to the corporate property is vested in the corporation and not in the owner of its stock."  Est. of Raleigh, 947 A.2d at 469 (quoting Off. of People's Couns. v. Pub. Serv. Comm'n of the Dist. of Columbia, 520 A.2d 677, 682 (D.C. 1987)).  Because the LLC owns the title to the property, it is the one party that may legally bring the suit.

Moreover, Gallo does not allege a "special injury" that gives rise to either exception to the general rule that the owner of an LLC may not sue on its behalf.  Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 77 (D.D.C. 2009) (quoting Labovitz, 172 F.3d at 901)).  First, he does not allege that the defendants owed him a duty independent of their duties to the LLC.  Second, Gallo's main alleged injury is the same as the LLC's injury—loss of rent that reduces his compensation.  See Compl. ¶ 8.  His other alleged injuries, such as "stress and mental anguish" derive from his ownership interest in the LLC and its loss of rent.  Id. ¶¶ 7, 23.  Even if these injuries were somehow independent of the rental income, mere "injuries to reputation, emotional distress, loss of income, and substantial expense in defending" are "outside the scope of what constitutes a special injury."  Rockwell Cap. Partners, Inc. v. CD Int'l Enters., Inc., 311 F. Supp. 3d 52, 57 (D.D.C. 2018) (quoting Havilah Real Prop. Servs., LLC v. VLK, LLC, 108 A.3d 334, 354 (D.C. 2015)).

Gallo cites Harpole Architects, P.C. to argue that he has, in fact, suffered a special injury.  See Pl.'s Opp. at 1.  In that case, the court allowed a corporate shareholder to bring suit in his own name because his "lost wages" were a "special, individualized injury."  Harpole Architects, P.C., 668 F. Supp. 2d at 77–78.  He lost those wages because he "took no salary during certain

pay periods because [the] defendant fraudulently informed him" that the company lacked assets. Id at 77. In other words, the defendant made fraudulent representations to the plaintiff that led the plaintiff to deny himself income. That injury did not "derive" from the company's lost income but was due to the defendant's fraudulent conduct. Id. By contrast, any economic loss to Gallo directly stems from the lost rent to Gallo Holdings. Thus, Gallo has not suffered a special injury that would allow him to sue individually.

B. Substitution

All may not be lost for Mr. Gallo, however. Federal Rule of Civil Procedure 17(a)(3) enables an improper plaintiff to avoid dismissal by substituting the real party in interest within a "a reasonable time" after an "objection" has been made. Fed. R. Civ. P. 17(a)(3). Going by the materials the Court has before it, the defendants first objected to Gallo proceeding individually in its motion to dismiss, which was filed in May 2025. Substitution now would come within five months of the defendants' objection, which of course Gallo was entitled to contest. That is within a reasonable amount of time under the circumstances. Gallo therefore may cure his prudential standing problem by having Gallo Holdings step in as the plaintiff in his stead. But there's a hitch: Because Gallo Holdings is a corporate entity, it could only proceed through counsel. See Am. Airways Charters, Inc. v. Regan, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984).

To permit Gallo sufficient time to decide whether to substitute Gallo Holdings and retain counsel on its behalf to pursue this litigation, the Court will withhold its dismissal order for 30 days. See Federal Rule of Civil Procedure 17(a)(3) ("The [C]ourt may not dismiss an action" before "a reasonable time has been allowed for the real party in interest to . . . be substituted into the action."). Should Gallo throw in his cards, the Court will dismiss the case based on lack of prudential standing. Should Gallo instead ante-up, the Court will permit the defendants to renew

6

their alternative grounds for dismissal and give Gallo Holdings an opportunity to respond with the benefit of counsel.

C. Alternative Grounds for Dismissal

To assist Gallo and any prospective counsel in deciding how to proceed, the Court volunteers the following preliminary observations regarding a few of the defendants' alternative grounds for dismissal.[2] The Court's views are not binding—it would gladly entertain counterarguments should Gallo Holdings elect to proceed with the case.

First, Gallo appears not to have exhausted administrative remedies. The exhaustion requirement is "well-settled as an instrument to avoid premature adjudication of disputes." Angel v. Pan Am. World Airways, Inc., 519 F. Supp. 1173, 1177 (D.D.C. 1981). It is a prerequisite to filing suit, and "[i]f [the] issues have been raised in [Plaintiff's] [agency process], which remains pending, then it follows that [Plaintiff's] administrative remedies for these alleged violations cannot have been exhausted." Johnson v. D.C., 368 F. Supp. 2d 30, 44 (D.D.C. 2005), aff'd, 552 F.3d 806 (D.C. Cir. 2008). It does not matter that Gallo's claims are constitutional in nature, as "[e]xhaustion even of constitutional claims may promote many of the policies underlying the exhaustion doctrine." Marine Mammal Conservancy, Inc. v. Dep't of Agric., 134 F.3d 409, 413 (D.C. Cir. 1998) (collecting cases); see also Pakdel v. San Francisco, 594 U.S. 474, 480 (2021) (requiring exhaustion for a Takings claim); Beattie v. Astrue, 845 F.Supp.2d 184, 192 (D.D.C. 2012) (requiring exhaustion for a procedural due process claim). Gallo maintains that he complied with applicable exhaustion requirements because he "timely appealed

---

[2] Because prudential standing is not strictly jurisdictional, the Court sees no impediment to opining on the defendants' merits defenses.

the RAD denial to OAH" and "over two years ha[ve] passed since then and it remains in a bureaucratic black hole." See Compl. ¶ 19; D.C. Code § 42-3502.12; 14 DCMR § 4209. But those allegations prove only that OAH is still considering Gallo's arguments (albeit slowly) through an ongoing appeal. Because OAH's ultimate ruling could crystalize the issues, or even eliminate the need for the Court to intervene altogether, the Court would be unlikely to consider Gallo Holding's claims before OAH rules. See Pakdel, 594 U.S. at 480.

Gallo retorts that OAH's failure to decide his appeal allows the Court to consider the issues because the "administrative process has gone dormant." Pl.'s Opp'n at 2. But exhaustion requirements are "waived only in the most exceptional circumstances." UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of the Univ. of the District of Columbia, 56 F.3d 1469, 1475 (D.C. Cir. 1995) (citation omitted). Delays are rarely exceptional circumstances. See e.g., Mobile Expl. & Producing U.S., Inc v. Babbitt, 913 F. Supp. 5, 13-14 (D.D.C. 1995) (holding a six-year time frame for administrative proceedings would not constitute an undue delay). The Court would be unlikely to find a two-year delay in an OAH proceeding to constitute an "exceptional circumstance" that warrants waiving the exhaustion requirement. See UDC Chairs Chapter, Am. Ass'n of Univ. Professors, 56 F.3d at 1475. And it certainly could not do so absent more specific allegations as to why this delay is so exceptional as to excuse exhaustion.

Second, Gallo hints at an argument that the two-year delay itself might constitute a due-process violation. Gallo cites Kraebel v. New York City Dep't of Hous. Pres. & Dev., 959 F.2d 395 (2d Cir. 1992), where the Second Circuit greenlit a due process claim based on a New York City agency's two-year delay in reimbursing a landlord as required by statute. But to the extent Gallo Holdings may choose to advance this argument going forward, it would likely face an

uphill battle. As the defendants note, the underlying property interest at stake in Kraebel was a statutorily guaranteed payment to the landlord, which the Second Circuit characterized as an interest "of greater significance than is present in most other due process cases." Id. at 405. The property interest at stake here, by contrast, is a rent increase that the Rent Administrator determined was prohibited by the tenant's settlement agreement with her prior landlord. Given that obvious difference and absent any other supporting authority, Gallo Holdings would be hard-pressed to establish a due process violation based simply on OAH's delay in deciding Gallo's appeal.

Third, it is far from clear to the Court that Gallo Holdings has a constitutionally protected right to a rental increase that a contract prohibits it from imposing. And even if it does, the Court doubts that OAH's procedures deprive Gallo Holdings of the process it is owed, notwithstanding OAH's apparent lethargy in deciding the appeal. It is therefore unlikely that Gallo Holdings could state a procedural due process claim.

* * *

With the foregoing observations in mind, Gallo may by December 8 file a motion to substitute Gallo Holdings as the plaintiff in this case, accompanied by an amended complaint, signed by counsel, in the name of Gallo Holdings LLC.

CHRISTOPHER R. COOPER  
United States District Judge

Date: November 7, 2025