**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**GALLO HOLDINGS LLC – SERIES 1**,

Plaintiff,

v.

**DISTRICT OF COLUMBIA**, *et al.*,

Defendants.

Case No. 25-cv-1358 (CRC)

---

<u>**MEMORANDUM OPINION**</u>

Some landlords bristle at rent control, but not every frustration with the system amounts to a constitutional wrong.  Gallo Holdings LLC owns a rent-controlled apartment building in Washington, D.C.  The LLC was purportedly losing money on one of its units, so it petitioned the city's Rent Administrator for a rent increase.  After the Administrator denied the petition, the LLC appealed to the Office of Administrative Hearings.  With the appeal pending for roughly two years, Gallo went to court, alleging a Takings Clause claim and several procedural due process claims against the District of Columbia and the Administrator.  But the Takings claim is not ripe, the due process claims are not well pleaded, and the Defendants are shielded from suit in any event.  The Court will therefore grant Defendants' motion to dismiss.

## I.      Background

The Court draws the following factual background from Plaintiff's amended complaint, taking as true all well-pleaded factual allegations, as it must on a motion to dismiss.  <u>Peek v. SunTrust Bank, Inc.</u>, 313 F. Supp. 3d 201, 203 (D.D.C. 2018) (Cooper, J.).  Gallo Holdings LLC ("Gallo") owns a rent-controlled apartment building in the nation's capital.  <u>See</u> Am. Compl. ¶ 1.  In 2023, Gallo filed a hardship petition with the D.C. Rental Accommodations Division requesting a rent increase on one of the units.  <u>Id.</u> ¶ 10.  The petition was not contested by the

unit's tenant, and an internal audit report recommended granting it.  Id. ¶¶ 13–14, 23.  Yet the

Rent Administrator denied the petition because the increase would have violated a settlement

agreement between the tenant and the unit's former owner that capped rent hikes.  Id. ¶ 16;

Compl., Ex. 3 at 2–3.  Gallo appealed the denial of the petition to the Office of Administrative

Hearings ("OAH"), Am. Compl. ¶ 18, and Gallo's principal, Alexander Gallo, filed suit *pro se*

after two years without an answer from that body, see Compl. ¶ 19.

Defendants moved to dismiss Mr. Gallo's complaint on various grounds, including that he

lacked Article III standing because Gallo Holdings LLC—not Mr. Gallo himself—owns the

property.  Defs.' First Mot. at 1–2, 5.  The Court agreed, but with a twist: Mr. Gallo merely

lacked prudential standing, rather than constitutional standing, as he was not the party in interest

(the LLC was).  Gallo v. District of Columbia, No. 25-cv-1358, 2025 WL 3123727, at *2–3

(D.D.C. Nov. 7, 2025).  The Court thus allowed Mr. Gallo thirty days to substitute the LLC and,

because corporate entities cannot represent themselves, to hire counsel.  Id. at *3–4.  He did so,

despite the Court indicating that his claims faced an uphill battle.  See id. at *4–5.

In its amended complaint, Gallo brings four claims against the Rent Administrator and

the District.[1]  The first three claims allege that Defendants violated Gallo's procedural due

process rights by denying an uncontested hardship petition, Am. Compl. ¶¶ 23–28; denying the

petition *sua sponte*, id. ¶¶ 30-31; and engaging in "*ex parte* communication with an unidentified

respondent to obtain the facts on which to base its *sua sponte* dismissal," id. ¶ 35.  The final

claim alleges that Defendants violated the Takings Clause of the Fifth Amendment by depriving

---

[1] The amended complaint is not a model of clarity.  For instance, the complaint fails to specify which claims target whom.  Giving Plaintiff the benefit of the doubt, however, the Court presumes each claim is brought against both the District and the Rent Administrator in her individual capacity.

Gallo of "entitled rents."  Id. ¶ 41.  As for redress, Gallo seeks: (1) compensatory damages from the District; (2) nominal and punitive damages from the Administrator; and (3) an order compelling the Administrator to grant its hardship petition or, in the alternative, a declaration that it should be granted.  Id. at 5–6.

Defendants now seek dismissal of the amended complaint for failure to exhaust administrative remedies, failure to state a claim, failure to establish municipal liability, and qualified immunity.  Defs.' Second Mot. at 2.

## II.      Legal Standards

A complaint survives a Rule 12(b)(6) motion to dismiss if its well-pleaded facts, taken as true, plausibly establish a claim to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  Id.  Mere "labels and conclusions" or "naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).  The Court must make every reasonable inference in the plaintiff's favor at this stage, considering the alleged facts, "documents attached . . . or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave–Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## III.     Analysis

Gallo asserts a Takings claim and a trio of procedural due process claims.  The Court addresses them in turn.

3

A.  Takings Claim[2]

The Takings Clause of the Fifth Amendment prohibits the Government from taking private property for public use "without just compensation."  U.S. Const. amend. V.  Before reaching the merits of Gallo's Takings claim, the Court must ensure that the issue is ripe for judicial review.  See Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) ("[E]ven in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion.").  A Takings claim is not ripe unless "the government has reached a 'final' decision" about the property.  Pakdel v. City & Cnty. of San Francisco, 594 U.S. 474, 475 (2021).  So Gallo must show that "there [is] no question . . . about how the 'regulations at issue apply to the particular [property] in question.'"  Id. at 478 (quoting Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 739 (1997)).

Gallo has not made that showing.  To the contrary, several "avenues still remain for [the District] to clarify or change its decision" with respect to Gallo's hardship petition.  Id. at 480.  As Gallo concedes, its appeal of the Administrator's provisional denial of the petition is still pending with OAH.  Am. Compl. ¶ 18.  Plus, once that decision is rendered, Gallo may appeal any adverse ruling to the Rental Housing Commission ("RHC"), which has final say over hardship petitions.  See D.C. Code § 42-3502.16(h); 14 DCMR § 4208.15.  Because the District has not yet "committed to a position" regarding Gallo's petition, Pakdel, 594 U.S. at 479, the

---

[2] In its amended complaint, Gallo labeled its Takings claim "Substantive Due Process Violation or Takings Clause (Deprivation of Entitled Adjustment)."  Am. Compl. at 5.  This Court will address the claim only as a Takings claim. Even if the Court construed the claim as a substantive due process claim, Gallo would be unsuccessful because it fails to plead "either a substantial infringement of state law prompted by personal or group animus or a deliberate flouting of the law that trammels significant personal or property rights."  Elkins v. District Columbia, 690 F.3d 554, 562 (D.C. Cir. 2012) (cleaned up).  Moreover, the logic of Pakdel v. City & Cnty. of San Francisco, 594 U.S. 474 (2021), if not the direct holding, would still lead the Court to conclude that the substantive due process claim is not final and therefore not ripe for its review.

Takings claim must be dismissed for lack of subject matter jurisdiction, see Barry Farm Tenants v. D.C. Hous. Auth., 311 F. Supp. 3d 57, 66 (D.D.C. 2018).

    B.  Procedural Due Process Claims

Gallo's three separate due process claims—though difficult to parse—share a common theme: they all allege that the Administrator violated D.C. law or regulations.  First, Gallo claims the Rent Administrator "acted outside [of her] authority" and contrary to "proper procedure" when she denied the uncontested hardship petition.  Am. Compl. ¶¶ 23, 26.  Second, it alleges that the *sua sponte* dismissal of the petition violated District regulations.  Id. ¶¶ 20, 30–31; Opp'n at 1.  And third, it contends that the Rent Administrator's alleged *ex parte* communications violated District regulations.  Am. Compl. ¶¶ 20, 35, 37; Opp'n at 3.

But Gallo's claims cannot survive Defendants' motion to dismiss because it is axiomatic that "a mere violation of law does not give rise to a due process claim."  Am. Fed'n of Gov't Emps. v. Nicholson, 475 F.3d 341, 353 (D.C. Cir. 2007); see, e.g., Barwood, Inc. v. District of Columbia, 202 F.3d 290, 294 (D.C. Cir. 2000); Tate v. District Columbia, 627 F.3d 904, 908 (D.C. Cir. 2010); Goode v. District of Columbia, 531 F. Supp. 3d 366, 378 (D.D.C. 2021) (collecting cases); Badgett v. District of Columbia, 925 F. Supp. 2d 23, 32 (D.D.C. 2013).  Holding otherwise would risk "constitutionalizing every error of state administration."  Comm. of U.S. Citizens Living in Nicaragua v. Reagan, 859 F.2d 929, 944 (D.C. Cir. 1988).  Each of Gallo's three due process claims follows the same structure as the claims in Barwood, Tate, Goode, and Badgett.  Gallo, like the plaintiffs in those cases, claims that the District violated the Due Process Clause because it did not comply with its own laws and regulations—here, its procedures to adjudicate hardship petitions.  See Am. Compl. ¶¶ 12, 20, 23, 26–27.  Because a violation of state law, without more, is not enough to establish a due-process violation, Gallo fails to state a procedural due process claim.

True, Gallo insists in its opposition that it is concerned not with state-law violations, but with "the Administrator's acts which violate the constitution." Opp'n at 3. But "Judges are not expected to be mindreaders," Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005), and Gallo's threadbare complaint presents no other basis for concluding a constitutional due-process violation occurred. In effect, Gallo attempts to amend its complaint through its opposition to the motion to dismiss—which it may not do. See Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (collecting cases). In any event, Gallo's last-ditch effort fails because the new argument is mentioned "in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Consol. Edison Co. of N.Y., Inc. v. FERC, 510 F.3d 333, 340 (D.C. Cir. 2007). Gallo's opposition develops no meaningful constitutional argument and cites no authority or constitutional principle connecting Defendants' alleged conduct to a due-process violation. Instead, like the complaint, it rests on purported violations of D.C. laws and regulations. See e.g., Opp'n at 1–3. The opposition therefore does little to cure the deficiencies in the complaint.

Given the barebones and conclusory explanation in the complaint and opposition, the Court cannot readily discern the basis on which Gallo believes Defendants violated the Due Process Clause. And the Court is not obliged to divine a theory that Gallo has not clearly articulated. It will nonetheless endeavor to do so in the interest of completeness. Gallo still falls short.

To plead a procedural due process claim, Gallo must allege that (1) it was deprived of a protected property interest without (2) adequate process. See Esparraguera v. Dep't of the Army, 101 F.4th 28, 33 (D.C. Cir. 2024). Federal and state laws and regulations can create property interests. Logan v. Dep't of Veterans Affs., 357 F. Supp. 2d 149, 155–56 (D.D.C. 2004). And,

because due process is a flexible concept, what constitutes sufficient process depends on the circumstances. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). At a minimum, however, "a procedural due process claim requires the plaintiff to identify the process that is due." Doe ex rel Fein v. District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996) (per curiam). Plus, "[i]f procedures are already in place that provide adequate process but a plaintiff does not utilize those procedures, there is no constitutional violation." Medina v. District of Columbia, 517 F. Supp. 2d 272, 281 (D.D.C. 2007). After all, "a procedural due process claim is not complete when the deprivation occurs. Rather, the claim is complete only when the State fails to provide due process." Reed v. Goertz, 598 U.S. 230, 236 (2023) (cleaned up).

Squinting hard, one might discern a claim that Gallo had a protected interest in raising rent, and that due process required a hearing before the hardship petition was denied. Am. Compl. ¶¶ 26, 32. But see Opp'n at 3 ("This case does not concern a request for an oral hearing."). Assuming for the sake of argument that Gallo pleaded a protected property interest, that potential claim would nonetheless fail at the adequate-process prong.

As an initial matter, "there can be no claim of a due process violation if a plaintiff voluntar[ily] foregoes the due process procedures provided him." Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 317 (D.C. Cir. 2014); see also Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."). Here, Gallo could have requested an initial hearing on its hardship petition, see D.C. Code § 42-3502.16(b)-(c), but chose not to, Opp'n at 3. Had Gallo elected to do so, the hearing would have come with the full panoply of procedures mandated by the D.C. Administrative Procedures Act ("DCAPA"). D.C. Code § 42-3502.16(g). That alone

dooms Gallo's due process claims: "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." Alvin, 227 F.3d at 116; see Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

What's more, the District's scheme provides ample post-deprivation process. Gallo appealed the Administrator's denial to OAH, Am. Compl. ¶ 18; OAH's eventual decision is immediately reviewable by RHC, 14 DCMR § 4208.15; and RHC's final order may be appealed to the D.C. Court of Appeals, D.C. Code § 42-3502.19. True, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In this setting, however, three layers of review—particularly where the initial hardship-petition denial effected no change in the status quo—affords all the process the Constitution requires. See 3883 Connecticut LLC v. District of Columbia, 336 F.3d 1068, 1073–74 (D.C. Cir. 2003) (holding that the District's procedures afforded due process to a developer challenging a stop work order because they provided for "three levels of review" including "post-deprivation review before two District officials and then immediate appeal to the District Board of Appeals and Review").

To be sure, Gallo's appeal before OAH was pending for over two years as of the filing of the amended complaint. Am. Compl. ¶ 18. That is a long time to wait.[3] While lengthy delays can, in some extreme circumstances, raise due process concerns, this is not such a case. For one, petitioners are entitled to expeditious review at other steps in the process. See D.C. Code §§ 42-

---

[3] If OAH has not ruled on the appeal by the date of this Memorandum Opinion, counsel for Defendants is directed to provide the opinion to the assigned hearing officer or other appropriate official, whom the Court respectfully urges to act on the appeal expeditiously.

3502.16(a), (h) (requiring the Administrator to resolve petitions within 120 days and RHC to resolve appeals within 120 days).  More importantly, Gallo does not allege that it availed itself of processes to review OAH's inaction available under D.C. law.  For instance, because rent-adjustment petitions are subject to the DCAPA, id. § 42-3502.16(g), Gallo could have requested judicial review to compel "action unlawfully withheld or unreasonably delayed," id. § 2-510(a)(2).  Or it could have sought a writ of mandamus.  See D.C. Court of Appeals Rule 21(a) (providing procedures for seeking a writ of mandamus against a District official); Yeager v. Greene, 502 A.2d 980, 981 n.3 (D.C. 1985) (explaining that the purpose of the writ of mandamus is to "require an official to perform an affirmative, mandatory action").  Gallo, however, has pursued neither of these procedural avenues.  See Chavis v. Garrett, 419 F. Supp. 3d 24, 38–39 (D.D.C. 2019) (collecting cases).

In sum, even affording the allegations every possible reasonable construction, the amended complaint falls short of stating a constitutional due process claim.

C.  Monell and Qualified Immunity

Alternatively, the Court may assume a well-pleaded due-process violation and still dismiss the amended complaint.  Gallo's suit unavoidably founders on the two doctrinal shoals that sink many § 1983 actions: Monell blocks the municipal-liability claims, and qualified immunity defeats the claims against the Rent Administrator.

The District cannot be held vicariously liable for the unconstitutional conduct of its employees.  Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978).  Instead, the District is liable only if "official municipal policy" was the "moving force" behind the alleged constitutional violation.  Id. at 691, 694.  Such a policy exists when (1) the District adopts an explicit unconstitutional policy; (2) the unconstitutional action was taken by a final policymaker

9

with decision-making authority; (3) District employees pervasively engage in the same unconstitutional conduct such that a supervising policymaker must have been aware of the unconstitutional custom; or (4) the District knew or should have known of a high risk of constitutional violations yet showed deliberate indifference to that risk by failing to supervise or train its employees.  Hurd v. District of Columbia, 997 F.3d 332, 337 (D.C. Cir. 2021).

Gallo has not pleaded any such policy or practice by the District.  As best the Court can tell from the opposition's cryptic three-sentence discussion of municipal liability, Gallo proceeds on a final-policymaker theory of liability.  See Opp'n at 5.  But the Administrator is not a final policymaker because she lacks rulemaking authority.  See Singletary v. District of Columbia, 766 F.3d 66, 73–74 (D.C. Cir. 2014).  D.C. law gives RHC the "sole authority to issue, amend, and rescind rules and procedures" related to hardship petitions, while the Administrator merely runs the program "according to [those] rules and procedures."  D.C. Code §§ 42-3502.02(a)(1), 42-3502.04(b); see also id. §§ 42-3502.02(a)(2), 42-3502.16(h) (decisions by the Administrator are appealable to RHC).  The Administrator was thus "constrained by policies not of [her] making," so any decision to "depart[ ]" from those policies was not an "act of the municipality" for purposes of § 1983.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality op.); see also City of Canton v. Harris, 489 U.S. 378, 391 (1989) (no municipal liability where an "otherwise sound program has occasionally been negligently administered").

Qualified immunity similarly insulates the Administrator from suit.  Qualified immunity shields state and local officials from damages claims unless they (1) violated a right (2) that was clearly established at the time.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).  Usually, that requires

10

controlling precedent involving analogous facts or a "robust consensus of cases of persuasive authority." Ashcroft v. al-Kidd, 563 U.S. 731, 741–42 (2011) (internal quotation marks omitted). But Gallo has not cited a single similar case showing that the Fifth Amendment bans what the Administrator supposedly did in these circumstances.  Nor is this one of the rare cases in which the constitutional "violation was so obvious" that factually on-point case law is unnecessary to overcome qualified immunity.  Hope v. Pelzer, 536 U.S. 730, 734–35, 741–42 (2002) (handcuffing shirtless prisoner to hitching post to scorch under the sun for seven hours); see, e.g., Taylor v. Riojas, 592 U.S. 7, 8–9 (2020) (per curiam) (forcing prisoner to live in a feces-covered cell and sleep naked in another, frigid cell awash in raw sewage for six days total).  Qualified immunity thus forecloses the remaining claims against the Administrator.[4]

## IV.    Conclusion

For the reasons stated above, the Court will grant Defendants' Motion to Dismiss.  A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  August 7, 2026

---

[4] Besides damages, Gallo also asks the Court to order the Administrator to grant its petition or declare it granted.  Am. Compl. at 5.  But Gallo has appealed the Administrator's decision, and the remedy it seeks here is "roughly coextensive" with the relief OAH—or potentially RHC or the D.C. Court of Appeals later in the appeal process—may ultimately award.  Dist. Props. Assocs. v. District of Columbia, 743 F.2d 21, 26 (D.C. Cir. 1984).  This request therefore functions as an impermissible "attempt to circumvent the DC APA" and housing code and cannot be granted.  See id.; see also Rhodes v. Quaorm, 465 A.2d 370, 372 (D.C. 1983) ("A party may come directly to the trial court only to enforce, not to challenge, a decision of the Rent Administrator.").